UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 04-128-14 (RMC) |
| WILLIAM D. ROBINSON, | ) ) | |
| Defendant. | ) ) ) | |

**OPINION**

William D. Robinson has filed a *pro se* motion to vacate, set aside, or correct his sentence. The United States opposes and moves to dismiss his claim. The Court has reviewed the motion carefully and denies it because Mr. Robinson's claims are barred by the statute of limitations.

**I. FACTS**

William D. Robinson was a defendant in a multi-defendant prosecution. An investigation of the M Street Crew by the Safe Streets Task Force, a joint effort in Washington, D.C., by the Metropolitan Police Department (MPD) and the Federal Bureau of Investigation (FBI), began in 2002 and ended on March 16, 2004, when thirty-nine individuals were arrested in the District of Columbia, Maryland, Virginia, New York, and California. In a 159-Count Superseding Indictment filed on October 19, 2005, a grand jury charged Mr. Robinson and his co-defendants with narcotics conspiracy in violation of 21 U.S.C. § 846; racketeering conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68; narcotics trafficking; murder and other violent crimes; and various weapons crimes. *See* Superseding Indictment [Dkt. 386].

The defendants were divided into three groups for trial. The first group, consisting of Mr. Robinson, Jonathan Franklin, George Wilson, William Simmons, and Joseph Blackson, was tried by jury before this Court starting on March 6, 2006. On May 25, 2006, the jury convicted Mr. Robinson of one count of narcotics conspiracy (Count 1), one count of RICO conspiracy (Count 2), two counts of distribution of phencyclidine (PCP), one within 1,000 feet of a school (Counts 36 and 58), one count of possession with intent to distribute PCP (Count 73), and three counts of unlawful use of a communication facility to facilitate a drug trafficking offense (Counts 96, 101, and 103).

At trial, the evidence showed that Mr. Franklin was the leader of the M Street Crew, a "large-scale drug ring" that operated "an open air drug market" throughout a four-block area centered on the intersection of 18th and M Streets in Northeast Washington, D.C. *See United States v. Wilson*, 605 F.3d 985, 997 (D.C. Cir. 2010) (transcript citations and quotation marks omitted). Mr. Franklin operated with a consistent routine: he obtained bulk quantities of PCP and ecstasy from suppliers and repackaged the drugs for members of the Crew to sell. *Id.* at 998. Although Mr. Franklin ordinarily functioned as the Crew's leader, he was assisted in that role by his three "lieutenants," Messrs. Robinson, Wilson, and Blackson, who supplied narcotics to the Crew members who completed street sales and resolved disputes involving money or drugs when Mr. Franklin was absent. *Id.* Essentially, their job was "to oversee everything for the top man," namely, Mr. Franklin. *Id.* (internal quotation marks omitted). For example, William D. Robinson, also known as "Dee," was "one of Franklin's closest friends." *Id.* Mr. Robinson "would hold bottles of PCP for Franklin when he was away from 18th and M . . . and communicated regularly with Franklin about the Crew's drug sales and supply." *Id.* (internal citations and quotation marks omitted). Because Mr. Franklin spent Sundays with his family,

Mr. Robinson regularly assumed control of the enterprise in Mr. Franklin's absence. "Beneath Franklin's three lieutenants was a class of 'foot soldiers' who made individual sales in the 18th and M area." *Id.* at 999.

On September 6, 2006, this Court sentenced Mr. Robinson to life imprisonment on Count 1 (narcotics conspiracy); a mandatory term of life imprisonment on Count 2 (RICO conspiracy); 240 months incarceration on Counts 36, 58, and 73 (distribution of PCP and possession with intent to distribute PCP); and forty-eight months incarceration on Counts 96, 101, and 103 (unlawful use of a communication facility). The Court also sentenced him to sixty months of supervised release on Count 1; sixty months of supervised release on Count 2; thirty-six months of supervised release on Counts 36, 73, 96, 101, and 103; and seventy-two months supervised release on Count 58. *See* Judgment [Dkt. 653]. Mr. Robinson filed a timely appeal.[1] After full arguments concerning the trial, jury verdict, and sentence, the Court of Appeals affirmed Mr. Robinson's convictions and sentence on May 25, 2010. *See Wilson*, 605 F.3d at 1039.

Mr. Robinson filed the instant motion on February 20, 2014.[2] *See* 2255 Motion (Def. Mot.) [Dkt. 1241]. On May 8, 2014, the Government filed a Motion to Dismiss his claims

---

[1] Mr. Robinson made five arguments on appeal: (1) the cross-examination of MPD Officer Donna Leftridge was improperly limited in violation of the Sixth Amendment; (2) the district court improperly denied his motion for severance from Mr. Franklin; (3) the district court erred in its jury instructions concerning RICO conspiracy; (4) the district court erred in denying his request to call two lay witnesses who were familiar with drug dealing and the 18th and M Street area; and (5) the district court made erroneous factual findings at sentencing. *See Wilson*, 605 F.3d at 1002–03.

[2] The Court received and docketed Mr. Robinson's motion on February 26, 2014. However, under the prison mailbox rule, the operative filing date is that on which the petitioner placed his motion in the prison mail system to be sent to the Court. *Houston v. Lack*, 487 U.S. 266, 270–71 (1988). Since Mr. Robinson mailed his motion on February 20, 2014, the Court deems it filed as of that date.

3

as time-barred under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2255, which imposes a one-year statute of limitations on *habeas* petitions. Thereafter, Mr. Robinson filed a motion to strike the Government's response under Federal Rule of Civil Procedure 12(f). The Court denied Mr. Robinson's motion to strike on June 19, 2014, finding that the Government's filing was sufficiently responsive to be accepted into the record. The Court further directed that Mr. Robinson's motion to strike be construed as a reply in support of his motion to modify his sentence under 28 U.S.C. § 2255. The Court now considers the pending motions.

## II. LEGAL STANDARD

A federal prisoner claiming the right to be released on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack," may move the court which imposed the sentence to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Because "Section 2255 is not a substitute for a direct appeal," "in order to gain relief under *any* claim, [the movant] is obliged to show a good deal more than would be sufficient on a direct appeal from his sentence." *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A hearing need not be held on a § 2255 motion when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *accord United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996). When the judge ruling on the § 2255 motion is the same judge who presided over the trial, as is the case

4

here, the decision as to whether an evidentiary hearing is necessary is within the discretion of the court. *See Morrison*, 98 F.3d at 625.

### III. ANALYSIS

Mr. Robinson challenges his sentence of life imprisonment, arguing that Congress violated the U.S. Constitution when it enacted criminal statutes that allow federal judges to increase a defendant's sentence based on drug quantity.[3] *See* Def. Mot. at 3. In essence, Mr. Robinson contends that Congress is not constitutionally authorized to make drug quantity both an *element* of an offense, which must be charged in an indictment and proved beyond a reasonable doubt, and a *sentencing factor*, which can be found by a preponderance of the evidence by the sentencing judge. *Id.* at 6. Because drug quantity is an element of the charged offenses of narcotics and RICO conspiracy, he argues, the jury is constitutionally required to make an individualized determination as to drug quantity and Congress lacks authority to alter that process by statute. *See id.* at 2 ("[A] special jury verdict form cannot cure the absence of a jury finding a defendant's individual culpability when a violation of 21 U.S.C. § 846 occurs . . . ."); *id.* at 8 (arguing that "[e]lements of codified offenses," such as drug quantity, "must be charged in an indictment and proven to a jury beyond a reasonable doubt").

At the outset, the Court finds that no evidentiary hearing is required in this case. Having presided over Mr. Robinson's trial and sentencing, this Court is familiar with the facts and issues of the case. The parties' briefs and the record conclusively demonstrate that Mr. Robinson is not entitled to relief and that an evidentiary hearing is not warranted. However, as

---

[3] Specifically, Mr. Robinson argues that Congress violated the Ex Post Facto Clause of the U.S. Constitution. That clause provides that "[n]o bill of attainder or ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3; *see also id.*, § 10, cl. 1 ("No State shall . . . pass any Bill of Attainder [or] ex post fact Law . . . ."). The Ex Post Facto Clause forbids legislative acts that inflict punishment without a judicial trial. *BellSouth Corp. v. FCC*, 144 F.3d 58, 62 (D.C. Cir. 1998); *see also Collins v. Youngblood*, 497 U.S. 37, 43 (1990) ("Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts.").

5

described in detail below, the Court cannot consider the merits of Mr. Robinson's claim because it is barred by the statute of limitations.

### A. Statute of Limitations

Mr. Robinson concedes that he "has not timely filed an initial § 2255 motion in his case." Def. Mot. at 20. Nonetheless, he contends that his pending motion should be heard on the merits because he was ineligible for sentences of life imprisonment on Counts One and Two. In other words, Mr. Robinson argues that an exception to the limitations period applies to his case. AEDPA's statute of limitations gives prisoners "one year to file a habeas petition, with certain enumerated exceptions." *Pollard*, 416 F.3d at 54. Specifically, AEDPA provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Mr. Robinson does not invoke any specific ground for modification of the one-year statute of limitations. Accordingly, the Court will evaluate each statutory exception in turn.

First, it is well-established that a conviction becomes final "when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for writ of

certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). The Supreme Court denied Mr. Robinson's petition for writ of certiorari on February 21, 2012. *See Robinson v. United States*, 132 S. Ct. 1595 (2012). Because more than one year had elapsed between the date the Supreme Court denied certiorari, February 21, 2012, and the date Mr. Robinson filed the pending motion, February 20, 2014, Mr. Robinson has not met the statute of limitations.

Moreover, Mr. Robinson does not argue that he was prevented from timely filing the instant motion due to governmental action. Instead, Mr. Robinson relies on "his factual ineligibility to receive both sentences imposed at Counts One and Two," Def. Mot. at 20, as opposed to governmental obstructions to his filing a motion under 28 U.S.C. § 2255. *See id.* at 20 (noting that his petition was not timely filed because the applicable legal standards were more restrictive at the time of his appeal); *id.* at 21 (arguing that if drug type and quantity had been "properly used as elements of codified offenses . . . [Mr. Harrison] would not have received Life sentences as to Counts One and Two . . ."). As a result, Mr. Robinson has not satisfied the second exception to AEDPA's one-year statute of limitations.

Nor can Mr. Robinson rely on the date on which certain supporting facts could have been discovered through the exercise of due diligence. Mr. Robinson contends that he was ineligible for a sentence of life imprisonment based on factual findings that were made at his sentencing on September 6, 2006. *See, e.g.*, *id.* at 20 ("[I]n the instant case, [Mr. Robinson] uses his factual ineligibility to receive both sentences [for] Counts One and Two."). Mr. Robinson was sentenced by this Court nearly eight years ago, and thus, any factual findings made at that hearing do not qualify as new evidence for purposes of a § 2255 motion filed on February 20, 2014. The inapplicability of this exception is further highlighted by the fact that Mr. Robinson

raised arguments related to his sentence on direct appeal. *See Wilson*, 605 F.3d at 1003 ("Robinson, Wilson, and Blackson contend that the district court based their sentences on erroneous factual findings."). Because Mr. Robinson had all of the factual information necessary to support his claim more than seven years ago, it is clear that his claim is not based on subsequent factual developments, as this exception to the statute of limitations requires.

Mr. Robinson's main contention is that his motion should be deemed timely filed based on new *legal* developments, *i.e.*, the Supreme Court's decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013). He argues that *Alleyne* established a new substantive rule that "forbids the use of elements as sentencing factors and narrows the reach of the legislature, placing particular conduct beyond the power to punish . . . ." Def. Mot. at 19.

In *Alleyne*, the Supreme Court held that factual findings that increase either the statutory maximum or the mandatory minimum must be submitted to the jury and found beyond a reasonable doubt. 133 S. Ct. at 2158. Here, this Court did not find any facts at sentencing that increased the statutory maximum, and applied a mandatory minimum only to Count 1, *i.e.*, narcotics conspiracy. A narcotics conspiracy involving at least one kilogram of a mixture or substance containing a detectable amount of PCP and at least fifty grams of cocaine base requires a combined mandatory minimum sentence of twenty years imprisonment and a statutory maximum of life imprisonment. 21 U.S.C. § 841(a)(1); *id.* § 841(b)(1)(A)(iii)–(iv) (2006) (amended 2009). The jury found beyond a reasonable doubt that Mr. Robinson was responsible for at least one kilogram of a mixture or substance containing a detectable amount of PCP and at least fifty grams of cocaine base. *See* Verdict Form [Dkt. 552] at 30–31. The sentencing judge did not increase the applicable mandatory minimum or statutory maximum beyond that

established by the jury verdict. As a result, *Alleyne* did not announce a new substantive rule relevant to Mr. Robinson's claims.

Mr. Robinson apparently recognizes that *Alleyne* does not directly support his claim for relief, as he explains that he "does not base his claim on *Alleyne*'s holding," Def. Reply [Dkt. 1258] at 2, but rather on the "new substantive rule . . . recognized by Chief Justice Roberts and Justice Alito in their dissent . . . ," *id.* at 3. But the exception to the statute of limitations for § 2255 motions based on rules announced by the Supreme Court "is satisfied only if [the Supreme Court] has held that the new rule is retroactively applicable to cases on collateral review." *Tyler v. Cain*, 533 U.S. 656, 662 (2001) (construing identical language in 28 U.S.C. § 2244(b)(2)(A)). Put differently, "[t]he only way the Supreme Court can, by itself, lay out and construct a rule's retroactive effect, or cause that effect to exist, occur, or appear, is through a holding." *Id.* at 663 (internal quotation marks omitted).

Mr. Robinson does not allege that the Supreme Court announced that its decision in *Alleyne* would apply retroactively to cases on collateral review. *See* Def. Mot. at 18 (noting that "*this* Court is authorized to find that [Mr. Robinson's] claim is retroactive" (emphasis added)); *id.* at 20 (recognizing that "[s]everal Circuits . . . have recently announced *Alleyne* does announce a new rule of constitutional law *not made retroactive* by the Supreme Court" (emphasis added)). Mr. Robinson therefore fails to establish the legal predicate for this exception to the one-year statute of limitations. In addition, Mr. Robinson errs in his reliance on Chief Justice Robert's dissent. As noted above, the Supreme Court can establish a new rule only "through a holding." *Tyler*, 533 U.S. at 663. Accordingly, dictum in a majority opinion—much less a dissent—is not sufficient to satisfy this exception to the statute of limitations. *See id.* Because Mr. Robinson relies on implications arising from Chief Justice Roberts's dissent, the

9

Court finds that Mr. Robinson has failed to establish a new substantive rule applicable to his claims.

Mr. Robinson has not demonstrated that any enumerated exception to the statute of limitations applies here. The Court therefore finds that his constitutional claim is barred by the one-year statute of limitations.

**B. Equitable Tolling**

Although Mr. Robinson does not request equitable tolling, the Court addresses this ground for considering the merits of his constitutional claim because he is a *pro se* plaintiff. A defendant is entitled to equitable tolling only if he demonstrates that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010); *see also United States v. Cicero*, 214 F.3d 199, 203 (D.C. Cir. 2000) (noting that "[e]quitable tolling, which is to be employed only sparingly in any event, has been applied in the context of AEDPA only if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time" (internal citations and quotation marks omitted)).

Mr. Robinson has not alleged any facts sufficient to meet this standard. First, Mr. Robinson bases his constitutional claim on facts that were fully developed in 2006. There have been no recent developments sufficient to justify his untimely filing of the instant motion or to warrant equitable tolling of his claim. Further, Mr. Robinson has not alleged that any extraordinary circumstances prevented him from timely filing his *habeas* petition. He relies, instead, on the dissent in *Alleyne* to support the Court's consideration of the merits of his petition. *See* Def. Mot. at 19 ("[Mr. Robinson] argues that the new substantive rule erected from *Alleyne*'s holding and recognized by Chief Justice Roberts and Justice Alito [] prohibited

Congress from designating drug type and quantity as sentencing factors."); Def. Reply at 3 ("[I]t is clear [Mr. Robinson] advances a constitutional claim and uses a new substantive law recognized in *Alleyne*'s dissent to have his constitutional claim heard." (internal citation omitted)). But as discussed *supra*, Section III.A., the dissent in *Alleyne* did not establish a new substantive rule. As a result, the dissent does not qualify as an "extraordinary circumstance" sufficient to justify equitable tolling. The Court cannot consider Mr. Robinson's constitutional claim under the Ex Post Facto Clause, as it is barred by the one-year statute of limitations.

## IV. CONCLUSION

While the Court recognizes Mr. Robinson's desire to challenge his sentence on constitutional grounds, it cannot proceed to the merits because his claim is barred by AEDPA's one-year statute of limitations. Because Mr. Robinson has not provided any argument for equitable tolling, the Court will deny Mr. Robinson's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Dkt. 1241], and grant the Government's motion to dismiss [Dkt. 1257]. A memorializing Order and an Order denying a Certificate of Appealability accompany this Opinion.

Date: September 3, 2014
/s/
ROSEMARY M. COLLYER
United States District Judge